IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RUSSELL ALAN LATONA            )
                               )
            Plaintiff,         )
      v.                       )      C.A. No. 07-1 Erie
                               )      District Judge McLaughlin
OFFICER MATTHEW POLLACK, et al.)      Magistrate Judge Baxter
                               )
            Defendants.        )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that Defendants' motion to dismiss [Document # 6] be granted in part and denied in part. Specifically, the motion to dismiss should be:

    a.    denied as to the argument regarding Plaintiff's failure to exhaust under the Prison Litigation Reform Act;

    b.    granted as to the dismissal of Defendants Erie County Prison and Warden Veshecco;

    c.    should be denied as to qualified immunity on the Eighth Amendment claim involving medical treatment;

    d.    should be granted as to qualified immunity on the Eighth Amendment claims other than those involving medical treatment;

    e.    should be granted as to qualified immunity on the Fifth Amendment claims.

The only claims remaining pending should be the Eighth Amendment claim involving medical treatment and the First Amendment claim involving the denial of participation in religious services. The Clerk of Courts should be directed to terminate Defendants Erie County Prison and Warden Veshecco from this action.

1

By separate Order filed this day, Plaintiff will be directed to file an amended complaint regarding the Eighth Amendment medical claim to name the responsible parties.

## II. REPORT

### A. Relevant Factual and Procedural History

On January 1, 2007, Plaintiff, acting *pro se*, filed the instant civil rights action. Named as Defendants are: Officer Matthew Pollack, Officer Thomas Kaiser, Officer David Gorring, Officer Houghton, Officer Baird, CPL Alex, the Erie County Prison, and Warden James Veshecco.

Plaintiff was incarcerated at the Erie County Prison from October 4, 2006, through November 9, 2006, on a sentence of one to twenty-three months for the crime of retail theft. In his original complaint, Plaintiff raises five causes of action:

1) Defendant Pollack wrote a false misconduct against him on October 14th;

2) Defendants Kaiser and Gorring ignored Plaintiff's rights to a fair misconduct hearing;

3) Defendant Baird accused Plaintiff of actions which resulted in misconduct 'tickets', used abusive language and denied Plaintiff attendance at church;

4) Defendant Houghton harassed and used abusive language, misconduct tickets leading to lockdown, caused Plaintiff to be fearful of seeking medical attention; and

5) Defendants Erie County Prison and Veshecco ignored his medical complaints, kept him in 24-hour/day lockdown.

Plaintiff alleges that all Defendants violated his Fifth, Eighth and Fourteenth Amendment rights. Document # 3. Plaintiff complains that if he had not been housed in the SHU due to the false misconducts, he would have been released from jail sooner. Document # 13, page 4. Additionally, Plaintiff alleges that Defendants Erie County Prison and Warden Veshecco failed to train and supervise prison employees. Document # 3.

Presently pending before this Court is the Defendants' motion to dismiss. Document # 6. Defendants argue that his case should be dismissed: 1) because Plaintiff has failed to exhaust

2

his administrative remedies in accordance with the Prison Litigation Reform Act; 2) against Defendants Erie County Prison and Warden Veshecco; and 3) because all Defendants are entitled to qualified immunity as to the Eighth Amendment and due process claims[1]. In opposition to the motion to dismiss, Plaintiff filed a brief [Document # 13; # 17], as well as a proposed amended complaint [Document # 16]. Plaintiff's proposed amended complaint makes no new factual allegations against these Defendants. This Court previously directed that Defendants need not respond to the filing of the proposed amended complaint until specifically instructed to do so by this Court.

These issues are fully briefed and are ripe for disposition by this Court.

### B. Standards of Review

#### 1) *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P.

---

[1] Defendants do not move to dismiss the First Amendment claim on the basis of qualified immunity or any other ground.

3

12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

**2) Motion to dismiss**

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

4

### C. The Prison Litigation Reform Act

Defendants argue that this case should be dismissed because Plaintiff has failed to exhaust his administrative remedies in accordance with the requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until *such administrative remedies as are available*[2] are exhausted.

Id. (Italics added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought,"

---

[2] At this initial stage of the litigation, it appears that Plaintiff did not make any attempt to utilize the administrative remedies process while he was incarcerated. Plaintiff avers that he was "discouraged and even threatened to refrain from the filing of any grievance." Document # 13, page 5. This averment directly impacts whether administrative remedies were *available* to Plaintiff, and such an allegation greatly disturbs this Court.

[3] A plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

Congress has "clearly required exhaustion").  There is no "futility" exception to the administrative exhaustion requirement.  Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.  The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines.  Woodford v. Ngo, ___ U.S. ___, ___ 126 S.Ct. 2378, 2384-88 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...").

The central inquiry here is whether the Prison Litigation Reform Act is applicable to this case - to wit, whether Plaintiff was a "prisoner confined in a jail, prison, or other correctional facility" on the date of the filing of the complaint thereby making him subject to the exhaustion requirements of the PLRA.  "It is the plaintiff's status at the time he files suit that determines whether § 1997e(a)'s exhaustion provision applies."  Norton v. City Of Marietta, 432 F.3d 1145, 1150, (10th Cir. 2005) (citing Nerness v. Johnson, 401 F.3d 874, 876 (8th Cir. 2005); Witzke v. Femal, 376 F.3d 744, 750 (7th Cir. 2004); Cox v. Mayer, 332 F.3d 422, 424-25 (6th Cir. 2003); Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002); Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000); Greig v. Goord, 169 F.3d 165, 167 (2d Cir.1999)).

In order to make this determination, this Court must look to the statute to determine whether Plaintiff meets the statutory definition of "prisoner" on the day this lawsuit was filed. "Our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." BedRoc Ltd., LLC v. U.S., 541 U.S. 176, 183 (2004) (internal citations omitted).

The statute defines the term prisoner as "any person incarcerated or *detained in any facility* who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h)(emphasis added).

It is beyond dispute that on the date of the filing of this lawsuit[4], Plaintiff was not a prisoner and so, the PLRA does not apply to this case. See Ahmed v. Dragovich, 297 F.3d 201, 210 n.10 (3d Cir. 2002) ("[E]very court of appeals to have considered the issue has held that the PLRA does not apply to actions filed by former prisoners."). Accordingly, the motion to dismiss should be denied in this regard.

### D. Defendants Erie County Prison and Warden Veshecco

Next, Defendants argue that the Erie County Prison and Warden Veshecco should be dismissed.

Plaintiff seeks monetary damages from the Erie County Prison. The Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981)(Pennsylvania); Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274 (1977) (state agencies); Edelman v. Jordan, 415 U.S. 651 (1974) (state employees acting in their official capacity). The only ways that a state may be sued in federal court are if (1) the state has waived its Eleventh Amendment immunity (Kentucky v. Graham, 473 U.S. 159 (1985)), or (2) Congress has made it unmistakably clear in either the language of a statute or in its legislative history that it is its intention to permit such suits (Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001)). Thus, unless Erie County Prison has consented to suit here or the Congress has expressly abrogated this institution's Eleventh Amendment immunity, neither of which has occurred, this case should be dismissed against the prison.

In addition, entities acting under color of state law cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held

---

[4] This civil action was docketed on January 3, 2007, and Plaintiff was released from the Erie County Prison on November 9, 2006.

liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). To state a viable claim under section 1983 against Erie County Prison or Warden Veshecco, Plaintiff must allege that he was injured as the result of a "policy or custom" of this entity-defendant. Monell, 436 U.S. 691. A "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). Plaintiffs' complaint contains no allegations that a custom or policy of the prison or the warden led to any claimed injuries. These two Defendants are named as defendants simply as the entities-in-charge and thus, Plaintiff's complaint fails to state a claim upon which relief may be granted.

Therefore, Defendants Erie County Prison and Warden Veshecco should be dismissed from this action.

### E. Qualified immunity as to the Eighth Amendment claims

Finally, Defendants argue that the Eighth Amendment and due process claims should be dismissed against all of them because they are entitled to qualified immunity.

The doctrine of qualified immunity insulates government officials from liability for damages insofar as their conduct does not violate clearly established rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). An officer performing his discretionary functions is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

8

Curley v. Klem, 278 F.3d 271, 277 (3d Cir. 2002). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 536 U.S. 730 (2002).

The analytical framework that district courts should employ in determining whether the defense of qualified immunity applies is clearly established:

> The Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? Saucier, 121 S.Ct at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. See id. In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. This inquiry, the Court noted, must be undertaken in light of the specific context of the case, not as a broad general proposition. Id. If a court concludes that an officer's conduct did violate a clearly established constitutional right, then it must deny him the protection afforded by qualified immunity. See id. at 2156-57.

Curley, 278 F.3d at 277. See also Hope, 536 U.S. 730; Doe v. Delie, 257, F.3d 309 (3d Cir. 2001).

### 1) Eighth Amendment Medical Claim

#### a) Step One - The Initial Inquiry

So then, as to the initial inquiry, this Court must determine whether Plaintiff has alleged facts sufficient to show that his constitutional rights were violated. In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326,

9

347 (3d Cir. 1987). A serious medical need may also be found to exist where the denial or delay of treatment results in "unnecessary and wanton infliction of pain." Id.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). Mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). See also Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

In his original complaint, Plaintiff alleges that at the time he entered Erie County Prison on October 4, 2006, he was suffering from bipolar disorder, serious acid reflux, four fractured ribs, a shattered jaw and an injured knee. Document # 3, ¶¶ 13, 17. Despite his repeated requests for medication and treatment, he was denied both until October 16, 2006. Id. at ¶ 15. Plaintiff has sufficiently alleged an Eighth Amendment violation for the deprivation of medication and the delay in medical treatment.[5]

### b) Step Two - "Clearly Established"

As this Court has addressed the threshold question finding that Plaintiff has at least

---

[5] While sufficiently pleading this allegations is far removed from proving them, Plaintiff will be given the opportunity to do so.

stated a claim of constitutional violation in the medical context, the next step in the qualified immunity analysis is to determine whether the constitutional rights were clearly established at the time of the violation. Hope, 536 U.S. at 730. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). Recently, the Supreme Court observed:

> for a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the length of pre-existing law the unlawfulness must be apparent.

Hope, 536 U.S. at 739.

The second prong of this analysis is impossible for this Court to determine at this stage of the proceedings. Defendants have not responded to the allegations of deliberate indifference on the merits and therefore, this Court does not know what medical treatment Plaintiff received or when he received it, let alone whether it would have been "clear to a reasonable person that his conduct was unlawful in the situation he confronted."

While the Supreme Court has repeatedly emphasized the importance of resolving the immunity questions at the earliest possible stages of a case [Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987); Harlow, 457 U.S. at 818], "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right" [Curley, 298 F.3d at 277].

Defendants' motion to dismiss the Eighth Amendment medical claim on the basis of qualified immunity should be denied. As it is unclear from either the complaint or the proposed amended complaint, who Plaintiff alleges is responsible for the delays in his medical treatment, Plaintiff will be directed to file an amended complaint.

11

### 2) Eighth Amendment non-medical claim

#### a) Step One - Initial Inquiry

In the non-medical context, the Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526-527 (1984). To make out an Eighth Amendment claim based on prison conditions, the plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994) An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3d Cir. 2000).

As to the first requirement, "prison conditions violate the Eighth Amendment if they result in the 'unnecessary and wanton infliction of pain,' are 'grossly disproportionate to the severity of the crime warranting imprisonment,' or result in an 'unquestioned and serious deprivation of basic human needs.'" Robinson v. Carr, 99 F.3d 1150 (Table)(10th Cir.1991) quoting Rhodes, 452 U.S. at 346-47. As to the second requirement, deliberate indifference is a difficult standard to meet: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837.

Plaintiff's non-medical claims[6] do not establish an Eighth Amendment violation.[7] The

---

[6] An inmate has no right to be free from verbal abuse. Carney v. Craven, 2002 WL 1315605 (6th Cir.). "Mere allegations of verbal abuse, threats, or defamations by a correctional officer to a prisoner are not cognizable in a Section 1983 action." Fischl v. Armitage, 128 F.3d 50, 55 (2nd Cir. 1997). Use of derogatory racial epithets or slurs does not violate the due process clause of the Fourteenth Amendment, Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir. 1987), or

(continued...)
12

Eighth Amendment conditions alleged fall short of demonstrating cruel and unusual punishment because there is no evidence that they "inflict unnecessary or wanton pain" or are "grossly disproportionate to the severity of crimes warranting imprisonment," under the objective standard. Rhodes, 452 U.S. at 348-50. In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration. Bainum v. Sedgwick County Commissioners, 27 Fed.Appx. 965, 2001 WL 1637732, *3 (10th Cir. 2001). Thus, the facts alleged here do not constitute cruel and unusual punishment because they do not adequately allege that basic human needs were left unsatisfied. Tillman, 221 F.3d at 419 (prisoner was not subject to cruel and unusual punishment because he was never denied room, food, or other necessities).

Accordingly, the motion to dismiss should be granted in this regard.

### F. Qualified immunity - Fifth Amendment claim
#### 1) Step One - Initial Inquiry

Again, as to the initial inquiry, this Court must determine whether Plaintiff has alleged facts sufficient to demonstrate that his constitutional rights were violated. In this case, Plaintiff's civil rights claim regarding the false misconducts and the unfairness of the hearing are barred by the favorable termination requirement of Heck v. Humphrey [512 U.S. 447 (1994)]

---

[6](...continued)
the Eighth Amendment's prohibition against cruel and unusual punishment, Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987). See also Wright v. O'Hara, 2002 WL 1870479, at *6 (E.D. Pa. August 14, 2002) ("[V]erbal abuse or threats alone do not state a constitutional claim.") and Prisoners' Legal Association v. Roberson, 822 F.Supp. 185, 189 (D.N.J. 1993) ("Verbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

[7] As Plaintiff cannot meet the threshold requirement of the qualified immunity test, this Court need not address the second prong of the test.

and its progeny. In Heck, the Supreme Court held that a state prisoner could not maintain a § 1983 action for damages under the civil rights laws if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence ... unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. Later, in Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended Heck by holding that a state prisoner's § 1983 action challenging a prison disciplinary sanction and seeking "money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983" unless the disciplinary sanction has been overturned or invalidated. 520 U.S. 641, 648. The Court summarized this so-called "favorable termination requirement" by explaining that a "state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005). See also Hill v. McDonough, ___ U.S. ___, 126 S.Ct. 2096 (2006); Muhammad v. Close, 540 U.S. 749 (2004).

So then, the law is well established that a claimant cannot use a civil rights action as a vehicle to circumvent the validity of a prison disciplinary hearing. Thus, in order to recover damages involving conduct which is the subject of a prison misconduct conviction, a plaintiff must prove that the conviction has been reversed or declared invalid by a disciplinary appeal. See Banks v. Hayward, 2007 WL 120045, at * 6 n.7 (W.D. Pa. January 10, 2007), citing Avery v. Nichol, 2000 WL 282903, at *2 (6th Cir. 2000). Plaintiff makes no such showing here and, as such, he fails to allege facts sufficient to demonstrate that his constitutional rights were violated. Accordingly, Defendants' motion to dismiss should be granted as to this claim.[8]

---

[8] As Plaintiff cannot meet the threshold requirement of the qualified immunity test, this Court need not address the second prong of the test.

14

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss [Document # 6] be granted in part and denied in part. Specifically, the motion to dismiss should be:

- a. denied as to the argument regarding Plaintiff's failure to exhaust under the Prison Litigation Reform Act;
- b. granted as to the dismissal of Defendants Erie County Prison and Warden Veshecco;
- c. should be denied as to qualified immunity on the Eighth Amendment claim involving medical treatment;
- d. should be granted as to qualified immunity on the Eighth Amendment claims other than those involving medical treatment;
- e. should be granted as to qualified immunity on the Fifth Amendment claims.

The only claims remaining pending should be the Eighth Amendment claim involving medical treatment and the First Amendment claim involving the denial of religious services. The Clerk of Courts should be directed to terminate Defendants Erie County Prison and Warden Veshecco from this action.

By separate Order filed this day, Plaintiff will be directed to file an amended complaint regarding the Eighth Amendment medical claim to name the responsible parties.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of appellate rights. See Nara v. Frank, ___ F.3d ___, 2007 WL 1321929 (3d Cir. May 08, 2007).

S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: November 8, 2007