**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RUSSELL ALAN LATONA )
)
 Plaintiff, )
 v. )    C.A. No. 07-1 Erie
)    District Judge McLaughlin
OFFICER MATTHEW POLLACK, et al.)    Magistrate Judge Baxter
)
 Defendants. )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.      RECOMMENDATION

_____It is respectfully recommended that the motion for summary judgment filed by

Defendants Prison Health Services, Inc., Renee Wnek, and Susan George [Document # 66] be

granted.  The Clerk of Courts should be directed to close this case.

It is further recommended that Plaintiff's motion for leave to file a "Fourth Amended

Complaint" [Document # 71] be denied as futile.

By separate text order filed this day, the Answer [entered on the docket as a "Remark" at

Document # 74] to the proposed Fourth Amended Complaint and the motion for summary

judgment filed by PHS, Inc., Wnek, George, and Jeffrey Barninger [document # 75] against the

proposed Fourth Amended Complaint will be stricken.

## II.      REPORT

### A.      Relevant Procedural History

The procedural history of this case is long and convoluted, but is necessarily related

herein as it impacts the resolution of the pending motion for leave to file a "Fourth Amended

1

Complaint."

On January 3, 2007, Plaintiff, acting *pro se*, filed the instant civil rights action.  In his original complaint, Plaintiff alleged that at the time he entered Erie County Prison on October 4, 2006, he was suffering from bipolar disorder, acid reflux, four fractured ribs, a shattered jaw and an injured knee, and that despite his repeated requests for medication and medical treatment, he was denied both until October 16, 2006.  Document # 3, ¶¶ 13, 15, and 17.  Plaintiff also raised an excessive force claim and a First Amendment claim.  Id.

The original Defendants filed a motion to dismiss (document # 6) and in opposition to that motion, Plaintiff was allowed to file a proposed amended complaint on October 25, 2007.  Document # 16.  The undersigned filed a Report and Recommendation recommending the granting in part and denying in part of Defendants' motion to dismiss.  In pertinent part, the Report and Recommendation recommended that Erie County Prison and Warden Veshecco be dismissed and that Plaintiff's Fifth and Eighth Amendment claims related to the excessive use of force be dismissed.[1]  Document # 18.  By Memorandum Order filed on November 29, 2007, District Judge Sean J. McLaughlin adopted the Report and Recommendation as the Opinion of the Court.  Document # 20.

Thereafter, the undersigned issued an Order directing Plaintiff to file yet another amended complaint "regarding the Eighth Amendment medical claim in order to more specifically describe who is responsible for the denial and/or delay in medical treatment."  Document # 19.  The Order directed that the amended complaint be filed before December 10, 2007, and warned that Plaintiff's failure to comply could result in the dismissal of this action for failure to prosecute.  Id.

By Order dated December 17, 2007, this Court directed Plaintiff to show cause before January 3, 2008, for his failure to file the ordered amended complaint.  Document # 21.  On January 2, 2008, Plaintiff requested an extension of time in which to file the amended

---

[1]  The claims remaining were a First Amendment religious exercise claim and the Eighth Amendment medical claim.

complaint, which was granted until February 1, 2008.  Document # 22.  By motions filed on February 4, 2008, Plaintiff requested the appointment of counsel, as well as a further extension of time in which to file the amended complaint.  Documents ## 23, 24.  Plaintiff's motion for the appointment of counsel was denied, but his motion for a further extension of time was granted.  Documents ## 25, 26.  The order granting the extension of time mandated that the amended complaint be filed by February 25, 2008, and specifically warned:

> "this case cannot proceed until an amended complaint is filed.  Failure to comply with this Order will result in the dismissal of this action for failure to prosecute.  As Plaintiff has already had several extensions of time in this regard, no further extension will be permitted."

Document # 26.

On February 29, 2008, Plaintiff filed a document entitled "Plaintiff's Procedure" which has been construed as an amended complaint.  Document # 28.  On that same date, Plaintiff filed a Motion for Reconsideration with respect to Judge McLaughlin's ruling on the Defendants' motion to dismiss.  Document # 29.

By Order dated July 10, 2008, Judge McLaughlin granted the Plaintiff's Motion for Reconsideration and allowed Plaintiff to proceed with the Eighth Amendment excessive use of force claim.  As a result of this ruling, Plaintiff was directed to file another amended complaint no later than August 1, 2008, fully setting forth the Eighth Amendment medical claim, the Eighth Amendment excessive force claim, and the First Amendment religious exercise claim.  Document # 30.

By Order dated September 2, 2008, this Court directed Plaintiff to show cause before September 12, 2008,  for his failure to file the amended complaint as ordered by Judge McLaughlin.  Document # 32.

An amended complaint was filed on September 16, 2008.  Document # 35. During a hearing held on September 26, 2008, this Court struck that amended complaint, ordered that limited discovery as to identities of parties be allowed and that based upon information gleaned during that limited discovery, an amended complaint be filed by December 5, 2008.  Document # 36.  This Court also allowed Plaintiff to withdraw his claims against Kinnane, Pollack, Kaiser,

3

Gorring, and Houghton.  Id.

On December 2, 2008, Plaintiff filed a self-titled "motion for summary judgment" seeking default against PHS.  Document # 39.  On December 8, 2008, Plaintiff filed a motion for extension of time to file the amended complaint.  Document # 40.

By Order dated December 19, 2008, this Court directed that the pending motion for summary judgment be dismissed because Plaintiff had not named Prison Health Services as a Defendant to this action, and therefore summary judgment (or more properly, a default) may not be entered against it; and granted Plaintiff's motion for extension of time to file the amended complaint.  The Order directed that Plaintiff must file his Amended Pleadings by January 15, 2009, and that failure to file an amended complaint would result in the dismissal of this action for failure to prosecute.  The Order also warned that no further extensions of time would be granted without the showing of good cause.  Document # 42.

 The self-styled "Third Amended Complaint"[2] was filed on January 21, 2009, and names Correctional Officer Baird, Renee Wnek, Susan George, Prison Health Services, Inc., and John Does #1,# 2, and #3 as Defendants.  Document # 44.  Defendants Baird and John Does #1, #2, and #3 have since been dismissed, leaving only Wnek, George, and PHS, Inc. as Defendants to this action.  See Documents ## 45, 57.

Presently pending before this Court is a motion for summary judgment filed by Defendants Wnek, George, and PHS, Inc.  Document # 66.  Plaintiff has filed a brief in opposition to the pending motion (document # 72), as well as a motion for leave to file a "Fourth Amended Complaint" (document # 71), which remains pending.

By Text Order dated November 3, 2009, this Court directed that Defendants "may file a response to the motion to amend and the proposed amended complaint," before December 15, 2009.  Instead of filing a response to the motion to amend, counsel for Defendants, Alan Gold, Esq., filed an Answer to the Fourth Amended Complaint answering on behalf of PHS, Inc.,

---

[2]   An amended complaint generally supercedes (or takes the place of) the previously filed complaint.

4

Renee Wnek, Susan George.  Document # 74.  The Answer was also filed on behalf of Jeffery Barninger, despite the fact that Barninger had not been formally served by Plaintiff. Additionally, a subsequent motion for summary judgment has been filed on behalf of all four. Document # 75.

### B.    Allegations of the Third Amended Complaint[3]

In his Third Amended Complaint, Plaintiff explains that when he arrived at Erie County Prison on October 4, 2006, he had been under a doctor's care and had been prescribed medications for acid-reflux, back pain, and bi-polar disorder, as well as injuries from a recent fall.  Plaintiff alleges that upon his intake interview with Defendant Renee Wnek, he provided her with a list of his current medications and he complained of a fever associated with the recent onset of a cold.  Document # 44.  Thereafter, Plaintiff claims that he repeatedly sought medical attention, but he was not examined by a doctor until October 19th and did not receive any medications.  Id. at ¶ 17.

Plaintiff further alleges that Defendant George was assigned to Plaintiff as his mental health counselor and met with him on 10/5.  Id. at ¶ 19. At that time, Plaintiff alerted her to his mental health condition and explained that he had been without medications for a week.  Id. Plaintiff did not receive any medications for his bi-polar condition until October 19th.  Id. at ¶ 23.

As to Defendant Wnek, Plaintiff specifically avers:

> "Renee Wnek failed to thoroughly examine the Plaintiff during intake, review his Booking and Observation Reports and give immediate attention to the Plaintiff's medical records.  The Plaintiff believes that Prison Health Services failed to

---

[3]  The Third Amended Complaint also alleges that Defendant Baird denied Plaintiff the opportunity to attend religious services and that unknown prison staff used excessive force against him.  The Religious Exercise claim against Defendant Baird has been voluntarily withdrawn by Plaintiff.  Document # 45.  Because Plaintiff has not named anyone on the excessive use of force claim, all John Doe Defendants have been terminated from this action. Document # 57.

adequately train and supervise Renee Wnek in recognizing a serious medical need which eventually lead [sic] to unnecessary pain and suffering by the Plaintiff and thus a violation of his Eighth Amendment right."

Id. at pages 4-5.

As to Defendant George, Plaintiff specifically avers:

"that Susan George failed to respond to the Plaintiff's mental condition by allowing him to go without medication for his bi-polar condition for 15 days.  The Plaintiff believes that given his past suicide attempts as well as the medical and medications records that the Plaintiff presented during his intake Ms. George should have paid closer attention to the Plaintiff's needs and followed through in a more timely fashion verifying the Plaintiff's records.  The Plaintiff also accuses this Defendant of performing an improper mental health screening on the Plaintiff. The Plaintiff suffered through emotional episodes by depriving the Plaintiff of the medication he needed to control and manage his mental condition.  This also lead [sic] to unnecessary suffering that could have been avoided with adequate medical care and thus becomes a violation of the Plaintiff's Eighth Amendment right."

Id. at page 5.

As to Defendant Prison Health Services, Inc., Plaintiff specifically alleges:

"PHS failed to adequately train and supervise their staff and lacked guidelines or policies directing their staff to acknowledge and act when they examine or treat an inmate with a serious illness.  It was not until October 19th that the Plaintiff was asked to sign a "Release of Medical Information" form that was faxed that day to the Plaintiff's doctor's office in New York.  The Plaintiff cannot understand why it took the staff so long to respond to his request.  This Court must keep in mind that there is sufficient evidence pertaining to the Plaintiff's attempts to gain the attention of the medical staff.  In other works, it ultimately took fifteen days to respond to the Plaintiff's illnesses.  Had someone acted in a reasonable time to verify the Plaintiff's records he would not have had to suffer as he did.  Because of the actions of their staff, the Plaintiff did suffer unnecessary pain and anguish whereby violating this Eighth Amendment right."

Id. at page 7.

### C.    Standards of Review

#### 1)    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520-521(1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail,

it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### 2)    Motion to dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 95 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. Aug. 245, 2009) quoting

7

Iqbal, ___ U.S. at ___, 129 S.Ct. At 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").   A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 232, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible.  This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.
>
> *  *  *
>
> After *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  **First, the factual and legal elements of a claim should be separated.  The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.**  A complaint has to show such an entitlement with its facts.  As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief.  This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d. 203, 210-11(3d Cir. 2009).

### 3)        Motion for summary judgment

Federal Rule of Civil Procedure 56(c)(2)  provides that summary judgment shall be

granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court

must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.


### D.     Deliberate indifference under the Eighth Amendment

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976).   The standard is two-pronged: "[i]t requires deliberate indifference on the part of prison officials and  it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A plaintiff must show that prison officials had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Specifically, deliberate indifference requires the demonstration that prison officials knew of an excessive risk to an inmate's health or safety and affirmatively disregarded that risk. Id. at 837-38. See also Doe v. New Jersey Dept. of Corrections, 337 Fed. Appx. 220, 226 (3d Cir. July 8, 2009) ("it is well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference for purposes of an Eighth Amendment claim entitled to remedy under § 1983.").

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also be found to exist where the denial or delay of treatment results in "unnecessary and wanton infliction of pain." Id.

Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a

10

denial of reasonable requests for treatment that results in suffering or risk of injury,  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury"  White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).  See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Monmouth County, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment").

However, mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation.  Estelle, 429 U.S. at 106.  Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment.  United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n.2 (3d Cir. 1979). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment.  Inmates of Allegheny County Jail v. Pierce,  612 F.2d 754, 762 (3d Cir.1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir.1977).

### The Fever

Plaintiff's claim regarding the failure to treat his fever fails to state a claim under the Eighth Amendment as such an allegation even if true does not rise to the level of a constitutional violation.  A fever, taken alone, does not constitute a serious medical need.  Brown v. Beard, 2007 WL 914083, at * 3 (M.D. Pa. 2007) ("Plaintiff did not suffer serious medical injuries (arm and leg cramps, cold and fever) ... Plaintiff's physical injuries do not implicate constitutional protection.  Courts have held that cramps, colds and a sore throat are insufficient to rise to a level

of constitutional protection.").[4]  Accordingly, this claim should be dismissed for failure to state a claim.

### The Delay

Plaintiff alleges that he was denied his previously prescribed medications for a period of fourteen days (from his intake on October 4th through October 19th).  The evidence demonstrates that Defendants were not deliberately indifferent to Plaintiff's health issues in this regard.

Upon his entrance into the Erie County Prison, Plaintiff's vital signs, which were stable and normal, were taken by Defendant Nurse Wnek.  Document # 67-3, Affidavit of Renee Wnek, page 3; Document # 69-3, Sealed Medical Records, page 4. A Nurse's Note, signed by Wnek and dated October 5, 2006, indicates:

> "also on psychiatric meds.  Brought copies of records with him from PCP in Jamestown.  Will review with Dr. in AM.  Psychiatric referral done."

Document # 69, page 3.  Although Plaintiff presented copies of his medical records to prison officials upon his intake, these records were dated December 20, 2005 and were not "accepted as reflecting current treatment because they were nine months old."  Document # 67-4, Affidavit of Susan George, page 4.  PHS policy mandated that records be retrieved directly from an inmate's provider. Id.

Plaintiff was assigned to a mental health counselor, Defendant Susan George, for assessment based upon his history of mental health issues and a previous suicide attempt.

---

[4] See also Hall v. Holsmith, 2009 WL 2171242 (4th Cir. July 21, 2009) (symptoms including fever, body aches, and sore throat, did not amount to serious medical need such that temporary deprivation of a dose of over-the-counter medication rose to the level of deliberate indifference); Chavera v. Allison, 2009 WL 1011157, at *3 (S.D.Miss. April 15, 2009) ("Plaintiff's complaints of a low fever and back pain were minor illnesses, and therefore did not pose a substantial risk of serious harm to Plaintiff. Accordingly, Defendant's alleged inaction does not rise to the level of deliberate indifference."); Hall v. Miss. Band of Choctaw Indians, 2008 WL 5111071, at *2 (N.D.Miss.2008) (a prisoner's claim that a "head cold" implicated the Eighth Amendment dismissed as frivolous); Jackson v. Walton, 2003 WL 22846399 at *2 (N.D.Tex.2003) (fever and sore throat not a serious medical need because of common recognition that doctors can do little to treat a cold virus).

Document # 67-4,  page 3; Document # 69,  page 3. A Mental Health Counselor Note dated

October 5, 2006, signed by Defendant George, indicates "follow-up with treatment team for

psychotropic meds."  Document # 69, page 9.  Based upon his medical and psychiatric history,

Plaintiff was placed on regular watch status, which included observation with a thirty minute

monitoring cycle.  Document # 67-4, page 3; Document # 69, page 10; Document # 69-2, pages

38-41.  Defendant George agreed with the decision to place Plaintiff on regular watch status and

she directed that Plaintiff be seen for "medication stabilization" by Dr. Kohn.  Id.  While Plaintiff

was under regular watch, Defendant George did not observe any signs of mental deterioration.

Document # 67-4, page 3.

The record reflects that Plaintiff sought medical attention throughout this time period:

once on October 9th, twice on October 10th, and once on October 13th.  Document # 69, pages 13-

16.

A Memo from PHS dated October 6, 2006 indicates that the Mental Health Treatment

Team[5] rejected Plaintiff's request for psychiatric services as there was "no reason for psychiatric

intervention at this time because: we have not yet received medical records verifying your

reported diagnosis and treatment history."  Document # 69, page 11.

On October 10, 2006, Defendant George's Contact Note indicates: "follow-up with

Medical Records.  Inmate signed ROI [release of information] to expedite his services.  Wants

back on his pysch meds badly."  Document # 69, page 12.  In an email from Bernice Smith to

Susan George dated the same day, Smith complained:

> "Mr. Latona got here on 10-5-06 and was seen by MHC on 10-5-06 per Dep.
> Warden Kinnane due to the fact that he was acting peculiar and had a prior
> attempted suicide by hanging in 2000.  We suspected based upon his actions to err
> on the side of safety (if it was bizarre behavior due to drug usage) and I placed
> him on a withdrawal watch which would give the Medical Dept time to obtain his
> records (Even though he brought his records with him and they are in his property
> bin) and he would [sic] able to safely come off of any street drugs that he may
> have in his system.  I then saw Mr. Latona on 10-10-06 and he was getting angry
> due to the fact that no one has given him his medications.  I re-explained to him

---

[5]  The Mental Health Treatment Team is listed as consisting of Deputy Warden Kinnane,
Medical Administrator Jeffrey Barninger, Psychiatric Nurse Patty Whiteley, and Counselor
Susan George.  Document # 69, page 11.

> that I must put him in front of Treatment Team and have him Okayed by Treatment Team to see the Psychiatrist once I obtain the medical records. Well, 10/5/06 was a Thursday, I faxed his records to New York and I didn't get the records back until Monday and this Friday is when he will be presented to Treatment Team. There is nothing I can do about this and Mr. Latona is threatening all kinds of silly things in his requests slips because he thinks that I am ignoring him. I know that he wants his medication, he just needs to be patient. I am sure that Treatment Team will approve him but I can't usurp the Treatment Team and place him on Dr. Kohn's list.

Document # 69-3, page 35.

A Nurse's Noted signed by C.Perry and dated October 11, 2006, indicates:

> "Patient vomited large amount of liquid into toilet (and some solid chunks of something). Patient complains of nausea; says he hasn't gotten his Nexium or pshch [sic] meds since he came here. Has [illegible] GERD. Says he saw Susan George earlier today. Appears to be a chronically mentally ill individual in opioid remission. Will try to get him seen medically later today."

Document # 69, page 3; Document # 67-4, page 4.

On October 13th, Plaintiff presented additional withdrawal-like symptoms when he appeared paranoid, argumentative and agitated. Document # 69, page 19. According to Defendant George, Plaintiff "reported vomiting after every meal, but this was not observed or documented." Document # 67-4, at ¶ 7. George noted that Plaintiff "wants to see the psychiatrist ASAP - [illegible word] for safety through the weekend." Document # 69, page 19. A Memo dated October 13th indicates that Plaintiff was approved for psychiatric services by the Mental Health Treatment Team. Document # 69, page 21.

On October 19, 2006, Plaintiff was examined by Dr. Kohn who felt that Plaintiff's outburst was not due to "lack of medication but rather was an initial, purposeful act." Document # 69, page 23. Dr. Kohn prescribed psychiatric medications and discontinued the watch restrictions. Id. at pages 37, 48, 69-71. Plaintiff was also prescribed medications for acid reflux and pain on that day. Document # 69, page 25.

Although Plaintiff was denied his prescribed medications for 14 days, the record reflects that the denial was not malicious, sadistic, or even the result of apathy, but instead was due to the need to verify the treatment plan with the outside medical providers. Defendants' actions in this regard do not rise to the level of deliberate indifference here. Ward v. Lamanna, 334 Fed. Appx. 487, 491 (3d Cir. June 15, 2009) ("*Farmer* requires a state of mind more blameworthy than

14

negligence.  To violate the Cruel and Unusual Punishments Clause of the Eighth Amendment, a prison official must have a sufficiently culpable state of mind, which is similar to criminal law 'recklessness.'"); McCray v. Prison Health Services, Inc., 2007 WL 4181728, at *5-6 (M.D.Ala.,2007) ("Assuming, *arguendo*, that McCray may have experienced delays in the receipt of his medication [...], he has not come forward with evidence showing that the named defendants deliberately withheld [...] or knew of an escalating or emergency medical condition in regard to his prescriptions and failed to take steps to correct it.").

Prison medical staff simply "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir.1996).  Such is the case here.  Accordingly, the motion for summary judgment should be granted as to the claims against Defendants Wnek and George.

### E.    Failure to Train and Supervise

In his Third Amended Complaint, Plaintiff alleges that PHS failed to adequately train and supervise its employees.

Generally, section 1983 liability cannot be predicated solely on *respondeat superior*. Monell v. Department of Social Services, 436 U.S. 658 (1978); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997).  However, municipal liability[6] can be based upon an entities failure to adequately train its employees.  City of Canton v. Harris, 489 U.S. 378 (1989). In order to establish liability on a failure to train claim under § 1983, a plaintiff "must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate

---

[6] *Monell* involved a municipality, but its holding has routinely been extended to private corporations, like PHS, Inc.  See Harvey v. Harvey, 949 F2d 1127 (11th Cir. 1992); Lux v. Hansen, 886 F.2d 1064, 1067 (8th Cir.1989); Iskander v. Village of Forest Park, 690 F.2d 126, 128 (7th Cir.1982); Powell v. Shopco Laurel Comp., 678 F.2d 504, 506 (4th Cir.1982).

indifference to whether the alleged constitutional deprivations occurred." <u>Conn v. Bull</u>, 307 Fed. Appx. 631, at *3 (3d Cir. Jan.21, 2009) <u>quoting</u> <u>Giles v. Davis</u>, 427 F.3d 197, 207 n.7 (3d Cir. 2005).[7]

Here, despite being allowed to amend his complaint numerous times, Plaintiff has not alleged any causal connection between PHS's alleged failure to provide any specific training to its employees, Wnek and George, and/or how the lack of training "reflects deliberate indifference to whether the alleged constitutional deprivations occurred." <u>See</u> <u>Conn</u>.  Accordingly, this claim should be dismissed for failure to state a claim.

### F.        Plaintiff's Motion to Amend

#### 1)        The Proposed "Fourth Amended Complaint"

Plaintiff has filed a motion for leave to file a "Fourth Amended Complaint."  Document # 71.  In support of his motion to amend, Plaintiff explains:

> "it is the Plaintiff's position that the allegations in the Third Amended Complaint, combined with the documents and admissions submitted by the Defendants [...] in support of its summary judgment motion and/or referenced in Plaintiff's Third Amended Complaint, are sufficient to allege a claim against others pursuant to 42 U.S.C. section 1983.  The proposed Fourth Amended Complaint, which cumulates [sic] and clarifies the information already presented to this Court, alleges a policy or custom of Prison Health Services by which Plaintiff's rights were violated."

Document # 71.

---

[7]  In discussing the standard for failure to train in the context of a prison suicide, the Third Circuit explained:

> "the plaintiff must (1) identify specific training not provided that could reasonably be expected to prevent the suicide that occurred, and (2) must demonstrate that the risk reduction associated with the proposed training is so great and so obvious that the failure of those responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives."

<u>Woloszyn v. County of Lawrence</u>, 396 F.3d 314, 325 (3d Cir. 2005) <u>quoting</u> <u>Colburn v. Upper Darby Township ("Colburn II")</u>, 946 F.2d 1017,  1029-30 (3d Cir. 1991).

In the proposed Fourth Amended Complaint, Plaintiff asserts that Defendant Wnek failed to "recognize and investigate the Plaintiff's serious medical condition which lead to unnecessary pain and suffering" and Defendant George failed to recognize and expedite any therapy or medication for his illness.  See Document # 73, pages 4, 8.

In his claim against PHS, Plaintiff explains:

> the Plaintiff now accuses Defendant, Prison Health Services of also failing to properly supervise, train and manage their staff.  The Plaintiff believes that Defendant Prison Health Services was understaffed during his incarceration.  The Plaintiff also believes that if the staff was properly train [sic] and supervised, then he may not have gone so long without medication and/or treatment.  Various members of the staff had been alerted to the Plaintiff's excessive vomiting and mental deterioration.  Instead of coordinating treatment and follow-up on the Plaintiff's concerns, there appeared to be a lack of communication that could have resulted in more serious damage to the Plaintiff.  Had the staff provided even a minimal amount of attention and carried through on the Plaintiff's request, I believe that the Plaintiff would not have suffered as he did.  Because of the 'lack of attention' the plaintiff received, his mental state progressed into unusual behavior which eventually led to numerous 'lock downs.'  Because of these 'lock downs,' the Plaintiff was unable to be released from the prison after serving his eighteen day sentence.  Instead of being released on October 22nd, the plaintiff remained incarcerated until November 4, 2006.  Various members of the staff were also aware of the constant vomiting after meals that the Plaintiff suffered but choose to do nothing/or recognize the need for medication to control this function.  Because of the lack of attention, communication and failure to respond, the Plaintiff needlessly suffered thus causing this Defendant to violate his Eighth Amendment right."

Document #73, pages 7-8.

Plaintiff also names a new Defendant, Jeffrey Barninger and avers:

> "Defendant Barninger is the Health Services Manager at the Erie County Prison.  In the Defendant's own affidavit he outlines the topics of 'continuity of care' and 'receiving/screening.'  In this affidavit he cites polices [sic] that require continuation of care from outside providers and that the health staff is responsible for verifying an inmates [sic] medication.  He also states that, 'when an inmate informs one of the medical staff of past medical treatment, the inmate is requested to complete a request for information, immediately.'  (Usually within twenty four hours) He also states that the medical staff has access to booking information and any prior medical history from previous incarcerations.  These records or files establish a chronological record fo the health care provided during the period of an inmates incarceration.  As part of the Mental Health Treatment Team as well as the Medical Administrator, Defendant Barninger should have been aware of the delays in treatment for the Plaintiff's condition.  The Plaintiff accuses Defendant Barninger of failing to properly train and supervise the medical staff.  The Plaintiff believes that if Mr. Barninger's was/is part of the treatment team, it would seem that he would have been informed of the status of the Plaintiff's treatment plan.  The Plaintiff believes that this derelict [sic] of duty resulted in additional pain, suffering and metal [sic] anguish thus, a violation of the Plaintiff's Eighth Amendment right."

Document # 73, pages 6-7.

### 2)      Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 15(a) states that "leave [to amend] shall be freely given when justice so requires."  Fed.R.Civ.P. 15(a).  "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given."  Foman v. Davis, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure).  An amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted.  In re NAHC, Inc. Securities Litigation, 306 F.3d 1314, 1332 (3d Cir. 2002).

### Proposed New Claims against Old Defendants

Although the proposed Fourth Amended Complaint attempts to add flesh to the bones of Plaintiff's claims against Wnek and George, Plaintiff has made no new allegations which rise to the level of deliberate indifference on the part of these Defendants.

As to the claim against Defendant PHS, the proposed Fourth Amended Complaint does not raise any new claim (see page 6, herein) but only adds argument to the earlier allegations contained within the Third Amended Complaint.  In the proposed Fourth Amended Complaint, Plaintiff deduces that PHS's alleged failure to adequately treat his mental health issues caused his behavior to become uncontrolled ultimately resulting in the extension of his incarceration due to his misconducts.  Plaintiff's "new" statement does not cure the previously discussed pleading deficiencies of the Third Amended Complaint, and so, are futile.  Additionally, this Court has allowed Plaintiff countless opportunities to amend the complaint over the last three years and Plaintiff has still failed to adequately allege a failure to train claim against PHS.  Due to the advanced age of this litigation and the countless opportunities to amend over the past three years, Plaintiff should not be granted any further time or opportunity to re-plead his claim once again.

18

### Proposed New Defendant Barninger

Plaintiff's claim against Jeffrey Barninger should be denied as futile.  Non-medical prison officials, such as Health Services Administrator Jeffrey Barninger, are not

> considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. [...] If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.   Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [...] will not be chargeable with [...] deliberate indifference [under the Eighth Amendment].

Spruill, 372 F.3d at 236, quoting Durmer, 991 F.2d at 69. See also Foreman v. Bureau of Prisons, 2007 WL 108457, at *5 (3d Cir.).[8]

Accordingly, the motion to amend [Document # 71] should be denied as futile.  Because leave to file the Fourth Amended Complaint was never granted, the Answer to the Fourth Amended Complaint and the Motion for summary judgment filed against the Fourth Amended Complaint will be stricken.

---

[8]  Additionally, this Court notes that there is a statute of limitations issue with regard to Jeffrey Barninger as the claim against him arose over two years before the filing of the proposed "Fourth Amended Complaint" on November 16, 2009.  See Garvin v. City of Philadelpia, 354 F.3d 215 (3d Cir. (Pa.) 2003) (in Pennsylvania, the statute of limitations for a civil rights violation is two years from the date of the alleged violation.).  A claim accrues when the litigant knew or had reason to know of the injury.  Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir.1998).  Thus, the date when the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the defendant, triggers the limitations period.  See Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the limitations period).  Plaintiff's claim against this new Defendant is most likely time-barred, unless the amendment relates back to the date of the filing of the original complaint pursuant to Fed.R.Civ.P. Rule 15(c).  See Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 195 (3d Cir. 2001) (if a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time-barred if it "relates back" to a timely filed complaint).

**III.     CONCLUSION_____**

For the foregoing reasons, it is respectfully recommended  that the motion for summary judgment filed by Defendants Prison Health Services, Inc., Renee Wnek, and Susan George [Document # 66] be granted.

It is further recommended that Plaintiff's motion for leave to file a "Fourth Amended Complaint" [Document # 71] be denied as futile.

By separate text order filed this day, the Answer [entered on the docket as a "Remark" at Document # 74] to the proposed Fourth Amended Complaint and the motion for summary judgment filed by PHS, Inc., Wnek, George, and Jeffrey Barninger [document # 75] against the proposed Fourth Amended Complaint will be stricken.

In accordance with Fed.R.Civ.P. 72, the parties are allowed fourteen (14) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  No extensions of time will be granted.  Failure to file timely objections may constitute a waiver of appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
UNITED STATES MAGISTRATE JUDGE



Dated: January 8, 2010

20